IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
December 18, 2012 Session

**STATE OF TENNESSEE v. SUE ANN CHRISTOPHER**

**Appeal from the Criminal Court for Hancock County**
**No. 11-CR-3153     John F. Dugger, Jr., Judge**

**No. E2012-01090-CCA-R3-CD - Filed March 14, 2013**

The Defendant, Sue Ann Christopher, was convicted by a Hancock County Criminal Court jury of first offense driving under the influence (DUI), a Class A misdemeanor, DUI accompanied by a child under the age of eighteen, a Class A misdemeanor, unlawful possession of prescription drugs, a Class C misdemeanor, and violating the implied consent law.  See T.C.A. §§ 55-10-401, 53-10-105, 55-10-406(3) (2012).  The trial court merged the DUI conviction with the DUI accompanied by a child under the age of eighteen conviction. The court sentenced the Defendant as a Range I, standard offender to concurrent terms of eleven months and twenty-nine days, with 120 days to be served in confinement for the DUI conviction and thirty days' confinement for the drug-related conviction.  On appeal, the Defendant contends that her sentence for the DUI accompanied by a child conviction is excessive.  We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Greg W. Eichelman, District Public Defender; DeAnna M. Snyder (at trial), Assistant Public Defender; and Douglas T. Jenkins (at the motion for new trial and on appeal), Rogersville, Tennessee, for the appellant, Sue Ann Christopher.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Senior Counsel; C. Berkeley Bell, Jr., District Attorney General; and Connie Trobaugh, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

This case relates to the Defendant's driving under the influence when four minor children were passengers in her car. At the trial, Hancock County Sheriff's Deputy Rocky White testified that on March 2, 2011, he observed the Defendant's yellow Camaro driving erratically, that the car crossed the center line, and that both driver's side tires crossed the center line completely and entered the oncoming lane of traffic. He said the car moved back into the proper lane but crossed the white fog line on the right side of the roadway. He said he followed the car for one-quarter of a mile and initiated a traffic stop.

Deputy White testified that when he approached the Defendant's car, he saw four young children in the backseat who were not wearing seatbelts. He said he smelled a strong odor of alcohol coming from the Defendant's breath. He asked the Defendant to perform the one-leg stand test, the nine-step walk and turn test, the finger to nose test, and the finger count test. He said that during the one-leg stand test, the Defendant lowered her foot to the ground to balance herself and raised her arms to the side to prevent her swaying. He said that the Defendant took four- to six-inch steps without touching heel to toe and used her arms for balance during the nine-step walk and turn test. He said the Defendant swayed back and forth and from side to side during the finger to nose test and touched her upper lip rather than her nose. He said that the Defendant could not count backwards from four during the finger count test. He said that he arrested the Defendant for DUI and that the Defendant had four white tablets in her front pants pocket, which the parties stipulated were not a controlled substance. He said the Defendant did not present a prescription bottle or any evidence of having a prescription for the tablets. He said he read the implied consent law to the Defendant, who refused to provide her blood for analysis. He said that the Defendant attempted but could not blow into the breathalyzer tube and that the Defendant claimed she was suffering from pneumonia.

On cross-examination, Deputy Wright testified that the Defendant left her lane of travel multiple times in a very short period of time. He said that he had seen the Defendant before the day of her arrest, that he was not "acquainted with her," and that he knew who the Defendant was. He said the Defendant pulled off the roadway in a reasonable amount of time. He said that before he administered the field sobriety tests, the Defendant told him she had a "shaking disorder" but that he did not see any shaking before she began the tests. He did not recall the Defendant's stating she had healed bone fractures in her legs that prevented her from performing the tests.

Deputy Wright testified that he requested the Defendant to submit to a blood test when they arrived at the county jail and denied that he requested her to submit to a test while en

route to the jail. He denied the Defendant consented to a blood test. He denied deputies competed to have the highest DUI arrest rates.

Tennessee Highway Patrol Trooper Josh Mabe testified that he assisted Deputy Wright during the Defendant's traffic stop. He said he saw the Defendant was "unsteady on her feet" and had slurred speech. He said the Defendant's movements were "sluggish." He denied being involved in the field sobriety tests or in arresting the Defendant. Although he did not recall the children's ages, he said they were small children. He said the oldest child probably attended elementary school. He said he stood beside the car because the children were moving around inside the car and attempting to climb out. He said he attempted to keep the children calm.

On cross-examination, Trooper Mabe testified that he met the Defendant before the night of her arrest, that he had seen her shake, and that although she had medical conditions, she acted differently during the traffic stop. He said the Defendant's speech was "more pronounced" and slurred and her movements sluggish.

Doug Wright testified for the defense that the Defendant was a friend, that the Defendant came to his house around 2:30 or 3:00 p.m. before her arrest, and that she left around 6:00 p.m. He denied the Defendant drank beer while at his home and said she did not act intoxicated. He said that the Defendant took his children to church and that had the Defendant been drinking, he would not have allowed the Defendant to drive them. He said that his children were four, five, seven, and eight years old and that Trooper Mabe called him to pick up his children at the scene. He said he picked up his children and went home without talking to the Defendant.

On cross-examination, Mr. Wright testified that he knew the Defendant was taking prescription medications. He said he thought the medications were related to her heart condition. He said the Defendant took his children to church around 6:45 p.m. He said his wife could not drive his children because she had been drinking beer throughout the day.

Stacy Wright testified that the Defendant stopped by her home around 3:00 p.m. before the Defendant's arrest. She said that the Defendant took her children to church around 7:00 p.m. and that they went to pick up her children around 8:00. She said she and the Defendant mostly talked during their visit because the Defendant had been hospitalized recently and was not permitted visitors. She said she had not seen the Defendant in four months. Ms. Wright admitted drinking beer during their visit but denied being intoxicated.

Ms. Wright testified that the Defendant was not drinking the night of her arrest and that the Defendant did not appear to be under the influence of anything. She said her

husband left home around 5:30 or 6:00 p.m. to ride his motorcycle. She said that she and the Defendant took her children to church just before 7:00 p.m., returned to her home for awhile, and picked up the children around 8:00. She denied that the Defendant swerved while driving and said that they thought the officer stopped the Defendant because her son unbuckled his seatbelt. She said that when she realized she and the Defendant were being arrested, she requested Trooper Mabe call her husband to pick up her children.

On cross-examination, Ms. Wright testified that the Defendant was hospitalized in October, that the Defendant was arrested in March, and that she did not know the Defendant was taking prescription drugs. She said the children attended "children's church" without adults on Wednesday nights. She said the children were not in car seats that night but were wearing seatbelts. She agreed her license was suspended at the time and said the officer asked her if she could drive the car home before he learned of her driving record.

The Defendant testified that hours before her arrest, she was visiting Ms. Wright, that she took Ms. Wright's children to church around 7:00 p.m., that she returned to Ms. Wright's home, and that she and Ms. Wright picked up the children at 8:00. She said she was stopped by the police after they picked up the children. She denied weaving or driving erratically. She said that after Deputy White stopped her car, he asked if she knew why he stopped her. She thought the Deputy stopped her car because one of the children got out of his seat. She said that when she gave the Deputy her driver's license, he asked if she had been drinking. She said she told Deputy White that she probably drank one-half of a beer around 2:00 or 2:30 that afternoon. She said that Deputy White asked if she knew the time and that she told him it was about 8:30 p.m. She said that she got out of her car and that Deputy White asked again how much she drank that day. She said that she gave the same response and that the Deputy called her a liar.

The Defendant testified that she told Deputy White that she would attempt to perform the sobriety tests, that she was disabled, and that she lowered her foot before counting to thirty during the one-leg stand test. She said that she broke her leg previously and that it was "crooked." She said she had pins and plates in her right foot and a shaking disorder. She said that she was diagnosed with the shaking disorder when she was eighteen years old and that her condition worsened under stress. She said Deputy White did not demonstrate how to perform the field sobriety tests.

The Defendant testified that after she performed the field sobriety tests, Deputy White asked if she had anything in her pockets and that she gave him her house keys and four Neurontin pills. She said that she agreed to a blood test and a breathalyzer test after she was placed inside the police cruiser. She said that he continued asking her to submit to a blood test, that she became irritated, and that she told him she would not submit to the test the fifth

time he asked. She said she took the breathalyzer test at the police station twice because she had difficulty blowing into the tube. She said she refused to take the breathalyzer a third time. She said she was released from the hospital in November after several weeks of treatment. She said she was on life support after her lung collapsed and was not permitted to drive until March.

The Defendant testified that she was prescribed Neurontin and Xanax, that Deputy White asked her if she had taken any medication, that she told him she had taken two Xanax, and that she had been taking Xanax since she was eighteen years old. She said Xanax did not affect her. She said she took the second Xanax around noon that day.

On cross-examination, the Defendant testified that she was still having problems with her lungs at the time of the traffic stop, that she blew into the breathalyzer tube like Deputy White told her, and that she refused to submit to a blood test. She denied telling Deputy White that she had a beer with dinner after driving Ms. Wright's children to church at 6:00 p.m. She said she was currently taking blood pressure medication, folic acid, cholesterol medication, Neurontin, Xanax, and potassium. She said she had a prescription at the time of the accident for the Neurotin pills found in her pocket, but she agreed she had not provided it to Deputy White or the prosecutor. She denied taking Oxycodone at the time of the traffic stop.

Deputy White was recalled as a rebuttal witness and testified that he showed the Defendant how to perform the field sobriety tests. He denied asking the Defendant if she knew why he stopped her car.

At the sentencing hearing, the Defendant testified that she was prescribed several medications, including blood pressure medication, cholesterol medication, folic acid, stomach medication, and anxiety medication for a nerve disorder. The court received as an exhibit a letter from the Defendant's treating physician since 2008 showing that the Defendant was diagnosed with Generalized Anxiety Disorder and prescribed one milligram tablets of Xanax as needed for anxiety. The Defendant stated that she had glaucoma, that she had lung and heart conditions, and that her doctor wanted to perform surgery for her heart condition.

Although a presentence report was prepared and the trial court relied upon it when making its findings with regard to mitigating and enhancement factors, the report is not included in the appellate record. According to the trial court, the report showed that on August 24, 1994, the Defendant was convicted of battery upon a police officer in Sanford, Florida. The Defendant was convicted of domestic violence, and at some point, a probation violation warrant was issued, but the outcome was unknown. The Defendant was previously

convicted of "several" public intoxication offenses, and the court found that the Defendant had a problem with alcohol. The court said the report showed that the Defendant had a pending DUI case in Claiborne County at the time the instant offense occurred and that the Defendant was on bond for that offense.

The trial court found that the Defendant's poor health was a mitigating factor. See T.C.A. § 40-35-113(13) (2010). Although the court recognized the Defendant's poor health, it found that the Defendant's conduct could have killed the four children in her car had there been an accident.

The trial court found that statutory enhancement factors (1), (8), and (10) applied. See T.C.A. § 40-35-114 (2010). The court found that factor (1) applied because the Defendant had a history of criminal convictions and criminal behavior based on the presentence report. See id. § 40-35-114(1) ("The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range."). The court found that enhancement factor (8) applied because the Defendant was on bond for DUI in Claiborne County at the time the instant offenses were committed. See id. § 40-35-114(8) ("The defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community."). The court found that enhancement factor (10) applied to all DUI offenses. See id. § 40-35-114(10) ("The defendant had no hesitation about committing a crime when the risk to human life was high."). The court stated that the children's being present in the Defendant's car was not the basis for finding that factor (10) applied because it was an element of the DUI accompanied by a child conviction. The court found, though, that the risk to human life was high with regard to other drivers on the roadway.

The trial court found that confinement was necessary to avoid depreciating the seriousness of the offense and to deter others from driving under the influence of drugs or alcohol. The court found that there was a lack of potential rehabilitation based on the numerous alcohol offenses dating to 1989.

The trial court sentenced the Defendant to eleven months and twenty-nine days, all suspended except for 120 days. Although the court stated that it was "doing that because there were four kids involved," it also said that the Defendant was required to serve at least thirty days because a child was involved and that its ordering 120 days' confinement was not based solely on the children's presence. The court said it ordered 120 days because the Defendant was on bond in another county at the time of the offense, had a history of public intoxication, and four children were involved. The court noted that had the Defendant been involved in an accident, four children would have been killed. With regard to the unlawful

possession of legend drugs, the trial court sentenced the Defendant to thirty days' confinement to be served concurrently with the 120 days. This appeal followed.

As a preliminary matter, the State contends the appeal should be dismissed because the Defendant failed to file a timely notice of appeal and waiver is not in the interest of justice. The State also notes that the Defendant failed to file a timely motion for a new trial. The Defendant conceded at oral argument that the notice of appeal was untimely, and appellate counsel stated that he did not represent the Defendant at the time the motion for a new trial was filed and that he was unaware of an untimely motion for a new trial.

The record shows that the judgments were entered on August 19, 2011, after the sentencing hearing. Trial counsel filed her motion for a new trial on September 23, 2011. After the motion for a new trial was filed but before the hearing, appellate counsel began his representation. Appellate counsel represented the Defendant at the hearing on the motion for a new trial, which was denied on February 2, 2012. Appellate counsel filed the notice of appeal on March 1, 2012, which he conceded was untimely.

A motion for a new trial must be filed within thirty days of the date sentencing is imposed. Tenn. R. Crim. P. 32(b). The time requirement is "mandatory and jurisdictional," and neither the trial court nor the State is permitted to waive it. State v. Martin, 940 S.W.2d 567, 569 (Tenn. Crim. App. 1997); State v. Givhan, 616 S.W.2d 612, 613 (Tenn. Crim. App. 1980) (internal quotations and citations omitted); see Tenn. R. Crim. P. 45(b). Likewise, "this court does not have the authority to waive the untimely filing of a motion for new trial." State v. Patterson, 966 S.W.2d 435, 440 (Tenn. Crim. App. 1997) (citing T.R.A.P. 4(a)). As a result, "[a] motion for new trial which is not timely filed is a nullity." State v. Dodson, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989).

The judgments were entered on August 19, 2011, the day of sentencing, and the Defendant's motion for a new trial was filed on September 23, 2011. The motion was untimely, and the Defendant has waived the right to appeal any issues in the motion for a new trial, except for sufficiency of the evidence and sentencing. See Patterson, 966 S.W.2d at 44. The Defendant only contends that her sentence for the DUI accompanied by a minor child conviction is excessive.

Tennessee Rule of Appellate Produced 4(a) states,

In an appeal as of right to the . . . Court of Criminal Appeals, the notice of appeal required by Rule 3 shall be filed with and received by the clerk of the trial court within 30 days after the date of entry of the judgment appealed from; however, in all criminal cases the "notice of appeal" document is not

jurisdictional and the filing of such document may be waived in the interest of justice.

Although the Defendant conceded at oral argument that the notice of appeal was untimely, we will consider the sentencing issue in the interests of justice.

The Defendant contends that her sentence for the DUI accompanied by a child is excessive and argues that the trial court's sentencing her to 120 days' confinement was the equivalent to four consecutive thirty-day sentences because four children were involved in the offense. The State responds that the trial court properly sentenced the Defendant. We agree with the State.

When imposing a misdemeanor sentence, the trial court is not required to conduct a sentencing hearing, but it must afford the parties a reasonable opportunity to address the length and manner of service of the sentence. T.C.A. § 40-35-302(a) (2010) (amended 2011). We note that the law provides no presumptive minimum for misdemeanor sentencing. State v. Creasy, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994). In misdemeanor sentencing, the trial court is not required to place specific findings on the record. State v. Troutman, 979 S.W.2d 271, 274 (Tenn. 1998). However, the trial court must consider the purposes and principles of the Criminal Sentencing Reform Act of 1989. T.C.A. § 40-35-302(d); see Troutman, 979 S.W.2d at 274 ("[W]hile the better practice is to make findings on the record when fixing a percentage of a defendant's sentence to be served in incarceration, a trial court need only consider the principles of sentencing and enhancement and mitigating factors in order to comply with the legislative mandates of the misdemeanor sentencing statute.").

Tennessee Code Annotated section 40-35-401(d) (2010) states that appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. Our Tennessee Supreme Court recently interpreted the statute to mean in the context of felony sentencing that length of sentence "within the appropriate statutory range [is] to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012). More recently, our supreme court has applied the abuse of discretion standard with a presumption of reasonableness to "questions related to probation or any other alternative sentences." State v. Caudle, 388 S.W.3d 273, 279 (Tenn. 2012). This approach is consistent with the statute, which provides that all sentencing questions under Code section 40-35-401(a) are subject to the same standard for review. Although our supreme court has not addressed whether the abuse of discretion standard with a presumption of correctness applies to misdemeanor sentencing, the court has previously cited Code section 40-35-401(d) regarding the standard of review of misdemeanor sentencing. See State v. Cooper, 336 S.W.3d 522, 525 n.4 (Tenn.

2011). As a result, we conclude that the abuse of discretion standard with a presumption of reasonableness now applies to misdemeanor sentencing.

As the Sentencing Commission Comments to section 40-35-401(d) note, the burden is on the appealing party to show that the sentence is improper. When determining if confinement is appropriate, a trial court should consider if:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1) (2010).

A defendant convicted of first offense DUI is required to serve at least forty-eight hours in confinement. T.C.A. § 55-10-403(s)(1) (2012). The mandatory minimum sentence, though, is thirty days' confinement if the Defendant was found guilty of first offense DUI and found to have been accompanied by a child under the age of eighteen. Id. § 55-10-403(a)(1)(B)(i).

The record reflects that the trial court considered the purposes and principles of the Criminal Sentencing Reform Act of 1989 in determining the Defendant's sentence. The court enhanced the Defendant's sentence from the thirty-day mandatory sentence to 120 days because of the Defendant's previous criminal convictions in the presentence report, her being on bond for another DUI offense at the time of the instant offense, and her committing the offense when the risk to human life was high. We note that the court's finding that the risk to human life was high was not predicated on the minor children's presence in the Defendant's car. Rather, the court found that the risk was created to other drivers on the roadway. We note, too, that although the pending DUI offense in Claiborne County occurred in 2005, the case was not resolved and the Defendant still on bond.

We agree with the trial court's finding that confinement was necessary to avoid depreciating the seriousness of the offense and to deter others from driving under the influence. The Defendant's lack of rehabilitation is shown by the alcohol-related convictions and arrests dating to 1989, a fact the Defendant does not dispute. The court stated that the

120 days was based on the Defendant's being on bond in Claiborne County at the time of the offense, her history of public intoxication, and the presence of four children in the Defendant's car. The court did not require the Defendant to serve eleven months and twenty-nine days because of her health-related conditions. The court stated that had the Defendant been healthy, it would have ordered her to serve the full sentence in confinement.

We conclude that the trial court did not abuse its discretion by ordering the Defendant to serve 120 days' confinement. The Defendant was on bond at the time the offenses were committed and had previous convictions for alcohol-related offenses and assaulting a police officer. There is no evidence in the record suggesting the court ordered 120 days' confinement solely because there were four children present in the Defendant's car. The court, rather, sentenced the Defendant based on her previous criminal history, her disregard for the safety of other drivers, and her being on bond at the time of the offense. The Defendant is not entitled to relief.

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE